UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION

| | |
|---|---|
| BRANDON L JONES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 2:20-cv-00009 |
| | ) |
| SAMANTHA MCLERRAN, et al. | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM OPINION**

Pending before the Court are Motions to Dismiss filed by Samantha McLerran, M.D. (Doc. No. 29), Daniel Trivette (Doc. No. 41), and the Cookeville Regional Medical Center ("CRMC") (Doc. No. 46). Those Motions have been fully briefed by the parties. (Doc. Nos. 24, 42, 47, 37, 45, 51). For the reasons that follow, the Motion to Dismiss filed by CRMC will be granted, while the other two motions will be denied.

**I. Background**

This is a civil rights action under 42 U.S.C. § 1983. Plaintiff asserts that Defendants violated his Fourth and Fourteenth Amendment rights based upon the following allegations:

On July 29, 2019, Plaintiff was pulled over by Cookeville Police Officer Trivette for a burnt-out license plate light. During a search of the vehicle, Trivette found a meth pipe. He then detained Plaintiff and called for backup. One of the responding officers patted Plaintiff down, and stated that he felt something in Plaintiff's buttocks area. Officer Trivette then looked inside the back of Plaintiff's pants and saw nothing, but informed Plaintiff that there were active warrants for his arrest. Officer Trivette arrested Plaintiff and placed him in the back of a patrol car.

Plaintiff was transported to the Putnam County Jail and, once there, was subjected to a pat-

down and strip search. During the strip search, Plaintiff was repeatedly told to "squat" and "cough." Although these searches produced no contraband, Officer Trivette informed Plaintiff that he was going to secure a search warrant that would allow for the search of Plaintiff's rectal cavity.

Approximately two hours later, Officer Trivette returned to the jail with a search warrant. He then transported Plaintiff to CRMC. Plaintiff was taken to a room, handcuffed to a hospital bed, and guarded by a Cookeville police officer and a hospital security guard (identified only as "John Doe 1"). Shortly thereafter, Dr. McLerran entered the room with a nurse. After his vitals were taken, Plaintiff was told to take his pants off, and he complied. He was then ordered to lie on a table and roll over on his left side. Dr. McLerran spread Plaintiff's butt cheeks, and found two small plastic packages of a white powder, which turned out to be illegal drugs.

Upon the discovery of the white powder, Plaintiff claims the following occurred:

> Defendant McLerran said, "Hold him down!" At that point, the hospital security guard, John Doe #1, grabbed Plaintiffs right arm and wrist firmly. Defendant Trivette quickly grabbed Plaintiffs right leg and pinned it down. Plaintiff saw Defendant McLerran putting a lubricant on her gloved hand. At that point, Plaintiff pleaded with the Defendants not to digitally penetrate his rectum. He repeatedly requested Defendant McLerran to give him an X-ray instead of digital penetration of his rectum. Defendant McLerran refused. He stated to Defendant McLerran and the other Defendants present, that he didn't have any drugs inside his rectal canal. Defendant McLerran stated, "Like we can trust you!" Plaintiff again requested Defendant McLerran to give him an X-ray to prove that he didn't have any drugs or contraband inside his rectum. Defendant McLerran refused again, and then thrust her gloved fingers inside Plaintiffs rectum, in rough manner that caused Plaintiff considerable physical pain, and emotional pain and suffering. Defendant McLerran found no drugs or any other foreign objects in Plaintiff's rectum. Then Defendant McLerran refused to clean Plaintiff s rectum area before she left the room. Plaintiff was left soiled with lubricant jelly and fecal matter in his rectal area.

(Doc. No. 28 at 9-10)

As a result of Defendants' conduct, Plaintiff claims that he suffered both emotional and physical pain. He seeks $500,000 in compensatory and $1 million in punitive damages from each

2

Defendant.

The foregoing allegations come from Plaintiff's Amended Complaint. However, they are substantially similar to the allegations made in the original Complaint, which the Court found to state a plausible claim, and sufficient to meet the initial screening requirements of the Prison Litigation Reform Act ("PLRA"), 28 U.S.C. § 1915(e)(2) and 1915A. (Doc. No. 7). At the time, the Court did not have before it the search warrant that Defendants have now filed in this case.[1]

The search warrant issued by Judge Wesley Bray of the Putnam County Criminal Court provided in relevant part:

> YOU ARE THEREFORE COMMANDED to make an immediate search of the body and body cavities, not excluding the mouth, genitals, or anal cavity of Brandon Luke Jones, more particularly described as follows: * * * The structure in which the search will be conducted is located at 1 Medical Center Blvd in the emergency room sector of Cookeville Regional Medical Center. * * * This search will be conducted and under the supervision of medical professionals who are employed by the Cookeville Regional Medical Center, and under the supervision of Cookeville Police Department sworn officers.

(Doc. No. 16-1 at 3) (ellipses in original).

## II. Motions to Dismiss by Dr. McLerran and Officer Trivette

Section 1983 confers a private right of action against any person who, acting under color of state law, deprives an individual of any right, privilege or immunity secured by the Constitution or federal laws. Wurzelbacher v. Jones-Kelley, 675 F.3d 580, 583 (6th Cir. 2012). To state a § 1983 claim, therefore, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws of the United States, and (2) that "the deprivation was caused by a

---

[1] "[I]f a plaintiff references or quotes certain documents, or if public records refute a plaintiff's claim, a defendant may attach those documents to its motion to dismiss, and a court can then consider them in resolving the Rule 12(b)(6) motion without converting the motion to dismiss into a Rule 56 motion for summary judgment." In re Omnicare, Inc. Sec. Litig., 769 F.3d 455, 466 (6th Cir. 2014) (citing Weiner v. Klais & Co., Inc., 108 F.3d 86, 88–89 (6th Cir.1997)). "Fairness and efficiency require this practice." Id.

3

person acting under color of state law." Tahfs v. Proctor, 316 F. 3d 584, 590 (6th Cir. 2003).

Turning to the second element first, Officer Trivette, a Cookeville police officer, was acting under state law for obvious reason. Dr. McLerran was also acting under color of state law when she performed the body cavity search, even though she is a private citizen. Booker v. LaPaglia, 617 F. App'x 520, 524 (6th Cir. 2015) (holding that doctor who performed rectal search on suspect was a state actor). In fact, as this Court noted in the initial screening order, the sole reason for Dr. McLerran's examination of Plaintiff was to "exercise[] the power of search traditionally reserved exclusively to the State," and her "role in the search was purely that of an auxiliary to normal police search procedures." Rodriques v. Furtado, 950 F.2d 805, 814 (1st Cir. 1991). She does not argue otherwise now.

As for the first element, and based primarily on the search warrant, Dr. McLerran and Officer Trivette argue that they did not deprive Plaintiff of a constitutional right. At a minimum, they assert that they are entitled to qualified immunity.[2] In support, they cite a number of cases where courts have found cavity searches to be lawful, and dismissed claims for violations of constitutional rights under Section 1983 arising from those searches.

Leaving aside that some of those cases were decided in the context of summary judgment and not on a motion to dismiss (e.g. Charlot v. City of Houston, 757 F. App'x 310 (5th Cir. 2018) and Rodriques), they may fairly be said to stand for the noncontroversial proposition that "physical rectal examinations of prisoners, when carried out by trained medical staff under sanitary conditions, are at times 'a necessary and reasonable concomitance of . . . imprisonment'" and constitutional.

---

[2] Officer Trivette even goes so far as to proclaim that "no case has ever held that a cavity search authorized by a warrant violated the Fourth Amendment." (Doc.. No. 42 at 8). How Officer Trivette would know that no case has ever so held is a mystery. It may be that there are no such cases reported in the Westlaw and Lexis data banks, but those resources to not cover the entire body of case law.

4

Sanchez v. Pereira-Castillo, 590 F.3d 31, 43 (1st Cir. 2009). Additionally, where, as here, "the alleged Fourth Amendment violation involves a search or seizure pursuant to a warrant, the fact that a neutral magistrate has issued a warrant is the clearest indication that the officers acted in an objectively reasonable manner[.]" Messerschmidt v. Millender, 565 U.S. 535, 546–47 (2012) (citing United States v. Leon, 468 U.S. 897, 922–923 (1984)).

Still, the "Fourth Amendment 'reasonableness' inquiry is largely fact-driven[.]" Scott v. Clay Cty., 205 F.3d 867, 877 (6th Cir. 2000). "'[T]he highly intrusive nature of strip searches and body cavity searches is widely recognized, fraught as they are with the inherent potential to degrade, demean, dehumanize, and humiliate.'" Reppert v. Marino, 259 F. App'x 481, 492 (3d Cir. 2007) (quoting Evans v. City of Zebulon, 351 F.3d 485, 492 (11th Cir. 2003)). To pass constitutional muster, body cavity searches "must be conducted in a reasonable manner"– searches conducted "in an abusive fashion . . . cannot be condoned[.]" Bell v. Wolfish, 441 U.S. 520, 560 (1979).

It may be, as Defendants maintain, that the search was clinical and pristine. If so, the Court would not hesitate to rule in Defendants' favor. However, the case is before the Court on a motion to dismiss and Plaintiff is proceeding *pro se.*

Pleadings drafted by *pro se* litigants are held to less stringent standards than those drafted by lawyers and should be liberally construed. Martin v. Overton, 391 F.3d 710, 712 (6th Cir. 2004), Even so, *pro se* litigants are not exempt from the requirements of the Federal Rules of Civil Procedure. Wells v. Brown, 891 F.2d 591, 594 (6th Cir. 1989).

In order to state a claim upon which relief may be granted, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must plead "enough facts to state a claim to relief that is plausible on its face," Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007), and this occurs "when the plaintiff

pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

In the Amended Complaint Plaintiff alleges that Dr. McLerran "thrust her gloved hand inside his rectum, in a rough manner that caused Plaintiff considerable physical pain, and emotional pain and suffering." (Doc. No. 28 at 10). No doubt, "[s]ome degree of force must necessarily be employed in any body cavity search," Sanchez v. Bauer, 2015 WL 5026195, at *8 (D. Colo. 2015), and what Plaintiff is attempting to describe may be no more than that. On the other hand, he may be trying to say that Dr. McLerran's actions were more sinister and were intended to inflict gratuitous pain. On this score, the Court would be remiss in failing to observe that, in his original Complaint, Plaintiff alleged that Dr. McLerran "vigorously thrusted [sic] her fingers in my rectum and in a motion like she was washing a cup in the sink spun her hand and wrist in that kind of motion and then pulled her hand out of my body." (Doc. No. 1 at 10). Even though the Amended Complaint became the operative pleading and supplanted the original, the Court is not required to ignore the initial Complaint. See Glover v. Bostrom, No. CV 18-285 (NEB/BRT), 2018 WL 7572496, at *2 (D. Minn. Oct. 18, 2018) ("In the context of pro se litigation, . . . courts have allowed an amended complaint to supplement the original."); Williams v. Aldridge, Civil No. 6:13-cv-6004, 2014 WL 504874, at *2 (W.D. Ark. Feb. 7, 2014) ("[P]ro se documents are to be liberally construed. For purposes of this motion, I will assume that Plaintiff meant the amended complaint to supplement the original complaint."); Ford v. Donovan, 891 F. Supp.2d 60, 62 (D.D.C. 2012) ("Instead of superceding his original Complaint, as a typical Amended Complaint does, this later pleading supplements it. Given his pro se status, the Court will treat the combined pleadings as one joint

6

Complaint").[3]

That said, Officer Trivette's potential liability regarding the rectal search seems remote at best. As he points out, the "only thing [he] is alleged to have done throughout this entire process is instruct Plaintiff to remove his pants and hold Plaintiff's right leg down to the examination table at Dr. McLerran's direction." (Doc. No. 42 at 4). However, Plaintiff also alleges that Officer Trivette arrested him without probable cause, with the implication being that he would not have been subjected to the cavity search but-for an unlawful arrest. It may be that any probable cause/unlawful arrest claim would be barred by Heck v. Humphrey, 512 U.S. 477 (1994), but that is not argued by Officer Trivette and is something that can be addressed at summary judgment. Moreover, to the extent that Officer Trivette argues about the existence of probable cause in his reply brief, Plaintiff was not given an opportunity to respond to those arguments, and those arguments were not even alluded to in Officer Trivette's initial briefing. Rather, the sole focus of his Motion to Dismiss and accompanying Memorandum (Doc. Nos. 41, 42) was on the propriety of the cavity search.

As to both Defendants' claim for qualified immunity, that, too, is premature. While a defendant's "entitle[ment] to qualified immunity is a threshold question to be resolved at the earliest possible point," Vakilian v. Shaw, 335 F.3d 509, 516 (6th Cir. 2003), "that point is usually summary judgment and not dismissal under Rule 12," Wesley v. Campbell, 779 F.3d 421, 433–34 (6th Cir. 2015). See also, Buddenberg v. Weisdack, 939 F.3d 732, 738–39 (6th Cir. 2019) (noting that Sixth Circuit "ha[s] cautioned that 'it is generally inappropriate for a district court to grant a 12(b)(6) motion to dismiss on the basis of qualified immunity'"). That is clearly the prudent approach here. Although the right to be subjected to only reasonable and non-abusive cavity searches has been

---

[2] Plaintiff characterizes his pleading as a "First Amended and Supplemental Complaint." (Doc No. 28 at 1).

7

established since at least Bell, and "[t]he constitutional right to 'freedom from arrest in the absence of probable cause' is clearly established within our circuit," Courtright v. City of Battle Creek, 839 F.3d 513, 520 (6th Cir. 2016), the question of whether either Dr. McLerran or Officer Trivette violated Plaintiff's constitutional rights is not resolvable on this sparse record.

In sum, the complaint against Dr. McLerran and Officer Trivette survives on the thinnest of reeds, and those Defendants may be entitled to summary judgment once the record has been developed. However, because Plaintiff is proceeding *pro se*, his pleadings are to be given some leniency, and he has stated a plausible claim, their Motions to Dismiss will be denied.

### III. Motion to Dismiss filed by CRMC

CRMC has filed a Motion to Dismiss on behalf of itself and the unnamed, "John Doe," security guard. CRMC raises a number of grounds for dismissal,[4] two of which the Court finds meritorious.

John Doe 1 is entitled to dismissal on statute of limitations grounds. The statute of limitations for Section 1983 claims in Tennessee is one year, as provided for personal injury actions under Tenn. Code Ann. § 28–3–104(a)(3). Berndt v. Tennessee, 769 F.2d 879, 883 (6th Cir. 1986). The period "begins to run when the plaintiff knows or has reason to know that the act providing the basis of his or her injury has occurred." Collyer v. Darling 98 F.3d 211, 220 (6th Cir. 1996).

---

[3] For example, CRMC argues that dismissal is appropriate because Plaintiff did not exhaust his administrative remedies under the PLRA. True, Plaintiff is now a state inmate and was previously an inmate in the Putnam County jail, and it is his burden to establish exhaustion. Brown v. Toombs, 139 F.3d 1102, 1104 (6th Cir.1998). By statute, however, he is only required to exhaust "administrative remedies as are available," and as they pertain to "prison conditions," 42 U.S.C. § 1997e. Even accepting that the cavity search related to "prison conditions" as CRMC claims, it is unclear what available remedies Plaintiff could pursue. He is not suing the jail or his jailers, but is rather suing a city police officer, a doctor, and a security guard for a search that occurred at a hospital.

"Sixth Circuit precedent clearly holds that new parties may not be added after the statute of limitations has run," and "[t]he naming of 'unknown police officers' in the original complaint does not save the pleading." Cox v. Treadway, 75 F.3d 230, 240 (6th Cir. 1996). In other words, "'John Doe' pleadings cannot be used to circumvent statutes of limitations." Id.; see also Cantino v. Roe, No. 3:17-0499, 2019 WL 1282960, at *2 (M.D. Tenn. Mar. 20, 2019) (refusing to allow amendment identifying John Doe defendant in Section 1983 action because "Sixth Circuit precedent clearly holds that 'replacing a John Doe with a named party in effect constitutes a change in the party sued,' . . . which cannot be done after the statute of limitations has run"); Krinks v. Haslam, No. 3:12-CV-01095, 2017 WL 1857352, at *4 (M.D. Tenn. May 9, 2017) (stating that "amendment to identify John Doe officers did not relate back where statute of limitations had run").

Plaintiff's cause of action accrued on July 29, 2019, when he was arrested and searched. To date, "John Doe 1" has not been identified or served with process. This is true even though, in the screening Order, Plaintiff was specifically "warned that process cannot be served upon an unidentified defendant," and was "put on notice of his obligation to conduct a reasonable investigation or, if necessary, to conduct discovery to promptly determine the full name of the unidentified defendant, [and] to seek and effect timely service of process upon him as required by Fed. R. Civ. P. 4(m)[.]" (Doc. No. 7 at 7-8). Any claim against John Doe is now time-barred.

CRMC is entitled to dismissal because the only conceivable basis for holding it liable is that it employed "John Doe 1," and a physician (who may or may not have been an employee) performed the search in a room at the hospital. However, there is no *respondeat superior* liability under Section 1983. Iqbal, 556 U.S. at 676. That is, employers and/or supervisors "are responsible only for 'their own illegal acts.' . . . They are not vicariously liable under § 1983 for their employees' actions." Connick v. Thompson, 131 S. Ct. 1350, 1359 (2011) (quoting Pembaur v. Cincinnati, 475

9

U.S. 469, 479 (1986)). Therefore, liability for supervisors or employers attaches "only if the challenged conduct occurs pursuant to [an] 'official policy' [or custom], such that the . . . promulgation or adoption of the policy can be said to have 'cause[d]' one of its employees to violate the plaintiff's constitutional rights." D'Ambrosio v. Marino, 747 F.3d 378, 386 (6th Cir. 2014) (quoting Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 692 (1978).

Plaintiff does not allege the existence of an "official policy" relating to cavity searches, a persistent and widespread policy of CRMC condoning improper searches, inadequate training that led to his alleged deprivation, or the "existence of a custom of tolerance [of] or acquiescence [to] federal rights violations" by CRMC. Without any such allegations, the complaint must be dismissed as to CRMC. See Burgess v. Fischer, 735 F.3d 462, 478 (6th Cir. 2013); Boulton v. Swanson, 795 F.3d 526, 531 (6th Cir. 2015).

### IV. Conclusion

On the basis of the foregoing, the Motions to Dismiss filed by Dr. McLerran and Officer Trivette will be denied. The Motion to Dismiss filed by CRMC will be granted.

An appropriate Order will enter.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE